IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| DAVID CORT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 11-3448-CV-S-RED |
| | ) | |
| KUM & GO, L.C., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court are the parties' motions for summary judgment (Docs. 21 and 23). After careful consideration of the parties' submissions and for the following reasons, the Court **GRANTS** Kum & Go, L.C.'s Motion for Summary Judgment (Doc. 23) and **DENIES** David Cort's Motion for Summary Judgment (Doc. 21).

### BACKGROUND

On August 29, 2011, Plaintiff David Cort ("Plaintiff") filed a petition for damages in the Circuit Court of Green County, Missouri. Plaintiff's Petition contained five counts against Defendant Kum & Go, L.C. ("Defendant"). Plaintiff's Petition alleged: Violations of the Fair Labor Standards Act (Count I); Violations of Missouri's Wage and Hour Laws (Count II); Breach of Contract (Count III); Quantum Meruit (Count IV); and Unjust Enrichment (Count V). On November 16, 2011, Defendant removed this action to Federal Court. Subsequently, on October 4, 2012, the parties filed their motions for summary judgment (Docs. 21 and 23).

Plaintiff's cause of action arises from Defendant's employment practices. Plaintiff was employed by Defendant as a General Manager of various Kum and & Go convenience stores in Springfield, Missouri from April 2004 to August 31, 2010. During the time he was employed by

Defendant, Plaintiff was expected to work 54 hours a week. Plaintiff was paid a bi-weekly salary of $1,616.57 or $808.28 per week. Plaintiff was not paid for overtime and his pay was not reduced if he did not work 54 hours in any given week. In addition to his salary, Plaintiff had the ability to earn up to an additional $1,000.00 a month in bonus pay based upon his managerial performance. Plaintiff now claims that Defendant violated the FLSA and Missouri's Wage and Hour Laws ("MWHL") by failing to compensate him with overtime pay.

## STANDARD OF REVIEW

Summary judgment is proper if, viewing the record in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To do so, the moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## DISCUSSION

Plaintiff and Defendant have both filed motions seeking summary judgment. Plaintiff's motion seeks summary judgment on his Fair Labor Standards Act claim and Missouri's Wage

2

and Hour Laws claim only. Conversely, Defendant seeks summary judgment on all of Plaintiff's claims.

### I.  KUM & GO L.C.'S MOTION FOR SUMMARY JUDGMENT

Defendant filed its motion for summary judgment asserting that the issue is ripe for summary judgment because the question of whether an employee is properly classified as an exempt employee under the Fair Labor Standards Act ("FLSA") and Missouri's Wage and Hour Laws ("MWHL") is an issue of law and that Plaintiff cannot generate a genuine issue of material fact as to whether he was an exempt executive employee.[1] *Citing Icicle Sea Foods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986). In addition, Defendant asserts that summary judgment is proper on Plaintiff's state law claims for breach of contract, unjust enrichment, and quantum meruit because the state law claims are preempted by the FLSA.

While Plaintiff responded to Defendant's argument and asserts that Defendant is not entitled to summary judgment, Plaintiff's response did not properly contest Defendant's statement of facts as set forth in Fed. R. Civ. P. 56(e) and L.R. 56.1(a). In the event a party fails to properly address the other party's assertion by "citing to particular parts of materials in the record" or "showing the materials cited do not establish the absence or presence of a genuine dispute," the court may consider the fact undisputed for purposes of the motion. *Quoting* Fed. R. Civ. P. 56(c); *see also* Fed. R. Civ. P. 56(e), L.R. 56.1(a). Since Plaintiff states that he disputes several of Defendant's facts but does not offer a citation as required by the rules, the Court will consider those facts as undisputed for purposes of this motion.

   A. *Defendant is entitled to summary judgment on Plaintiff's FLSA and MWHL claims*.

---

[1] The Court notes that Defendant asserts that the analysis for Plaintiff's FLSA claim and MWHL claim is identical under applicable law and that the Court should use the same analysis for both claims. *Compare* 29 U.S.C. §§ 207 (a)(1) and 213(a)(1) with Mo. Rev. Stat §§ 290.500 to 290.530. As Plaintiff does not dispute this assertion, the Court's FLSA analysis will apply with equal force to Plaintiff's MWHL claim.

3

The FLSA requires an employer to pay its employees a rate of at least one and one-half their regular rate of pay for hours worked in excess of forty hours in a week. 29 U.S.C. § 207(a)(1) and (a)(2); *Specht v. City of Sioux Falls*, 639 F.3d 814, 819 (8th Cir. 2011). However, if an employee falls within one of the exemptions identified in the act, the employer is not required to comply with the wage requirements of section 207. *See* 29 U.S.C. § 213; *Guerrero v. J.W. Hutton, Inc.*, 458 F.3d 830, 834 (8th Cir. 2006). The employer bears the burden of proving such an exception applies. *Hertz v. Woodbury Cnty., Iowa*, 566 F.3d 775, 783 (8th Cir. 2009). "The question whether [employees] particular activities excluded them from the overtime benefits of the FLSA is a question of law. . . ." *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986); *see also Jarrett v. ERC Props., Inc.*, 211 F.3d 1078, 1081 (8th Cir. 2000). However, the nature of employees' activities is a question of fact. *Id.* The Eighth Circuit has held "[c]ourts should broadly interpret and apply the FLSA to effectuate its goals because it is remedial and humanitarian in purpose." *Specht* at 819.

In this case, the outcome of both parties' motions for summary judgment hinge upon the determination of whether Plaintiff was an exempt employee. Defendant asserts that Plaintiff was an executive exempt employee under the rules. One of the exemptions identified in the act excludes employees "employed in a bona fide executive, administrative, or professional capacity. . . ." *Id.* at 213(a)(1). An exempt executive employee is an employee:

(1) Compensated on a salary basis at a rate not less than $455 per week . . . ;

(2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3) Who customarily and regularly directs the work of two or more other employees; and

4

(4) Who has the authority to hire or fire other employees whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status or other employees are given particular weight.

29 C.F.R. § 541.100(a).

While an employee is an exempt executive employee if the four factors, set forth above, apply to the employee, Plaintiff concedes that three of the four factors apply to Plaintiff. *See* Doc. 26 pg. 6-7. Plaintiff only disputes that his primary duty was not management of the store.[2]

The executive exemption test, set forth above, requires that the qualifying employee's primary duty be the "management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof." 20 C.R.F. § 541.100(a)(2). The regulations set forth a list of management activities which include, but are not limited to:

> interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102. In addition, the regulations define "primary duty" as "the principal, main, major or most important duty that the employee performs" and provide the following non-exclusive list of factors to consider in determining whether an employee's "primary duty" is management:

(1) [T]he relative importance of the exempt duties as compared with other types of duties;

---

[2] Plaintiff and Defendant set forth substantially the same arguments in the briefs supporting and opposing two motions for summary judgment.

5

> (2) [T]he amount of time spent performing exempt work;
>
> (3) [T]he employee's relative freedom from direct supervision; and
>
> (4) [T]he relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700(a). While this list is not exclusive, it provides a template the Court to use in order to determine whether an employee's primary duty is management and whether the employee is exempt under the regulations.

### 1. *Relative Importance of Exempt Duties as Compared with other Duties*

The first primary factor to consider is the "relative importance of the exempt duties as compared with other types of duties." *Id*. "Under this factor, courts must compare the importance of the plaintiff's managerial duties with the importance of her non-managerial duties, keeping in mind the end goal of achieving the overall success of the company." *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 505 (6th Cir. 2007) (*citing Donovan v. Burger King Corp.* (*Burger King II*), 675 F.2d 516, 521 (2nd Cir. 1982) (explaining that this factor considers which responsibilities are more important to the success of the business)). To properly analyze this factor the courts consider the allegedly exempt employee's non-managerial duties on one hand and, on the other hand, the same employee's managerial duties considering whether the company's goals could be accomplished if the manager failed to perform either his managerial or non-managerial duties. *Id*. In addition, "the court must consider [the employee's] job description, performance review criteria, bonus plan, and training. *Aschenbrenner v. Dolgencorp, Inc.*, 2011 WL 2200630, at *11 (D. Neb. June 3, 2011) (*citing Mayne-Harrison v. Dolgencorp, Inc.*, 2010 WL 3717604, at *20 (N.D. W.Va. Sept. 17, 2010).

Defendant argues that the undisputed facts show that it placed paramount importance on Plaintiff's management duties. To support this assertion, Defendant cites the various ways it

6

communicated to Plaintiff and the rest of the world that Plaintiff's management duties were his most important duties. First, while the general manager job description contains a short paragraph listing physical requirements, the remainder of the description is almost exclusively focused on job requirements, responsibilities, descriptions, and functions that are all related to management. Dep. Ex. 2. In addition, Plaintiff's performance was evaluated on criteria that mirrored the managerial items in the job description, including managerial decision making (Cort Dep. 74:17-20); training employees (Cort Dep. 45:20-24); managing the work of other employees and allocating company resources to meet company standards and objectives (Cort. Dep. 47:19-48:1, 137:21-138:17, 139:22-140:23); and coaching, disciplining, and evaluating the performance of other employees, including adjusting or recommending adjustment to their pay. (Cort Dep. 71:6-73:18, 141:1-6). Furthermore, Plaintiff's monthly bonus was predicated upon how well he executed his managerial duties, not how well he executed non-managerial duties. Miller Dep. 155:25-159:5; Miller Dec. ¶ 3. Finally, Defendant notes that the fact Plaintiff received training regarding "the Kum & Go method of doing business, of store management" and no other employees received this training underscores the importance Defendant placed on Plaintiff's managerial duties.

Plaintiff does not dispute the facts set forth by Defendant. Instead, Plaintiff takes an actions speak louder than words approach in his argument. While Plaintiff seems to concede that Defendant's policies, internal performance evaluation criteria, and other materials set forth the framework to establish that Plaintiff's managerial duties were most important to Defendant, Plaintiff argues that Plaintiff's pay is similar to a non-managerial employees pay, by using his method of calculation, and that this calculation shows that Defendant did not place more

7

importance on Plaintiff's managerial duties.[3]  Other than his argument that the Court should consider the employees' relative pay as the determining factor in which duties are more important, Plaintiff does not provide any additional argument or support for the proposition that Plaintiff's managerial duties were not more important than his non-managerial duties.

In this case, the facts regarding the relative importance of managerial duties as compared with non-managerial duties weigh in favor of Defendant.  As discussed above, when determining the relative importance of managerial duties in relation to non-managerial duties, the Court is to consider: whether the company's goals could be achieved if the manager failed to perform his managerial or non-managerial duties, the employees job description, performance review criteria, bonus plan, and training.  The facts are undisputed that Defendant's communications and actions regarding Plaintiff's duties placed a greater emphasis on his managerial duties than his non-managerial duties.  Defendant placed importance on Plaintiff's managerial duties through the general manager job description, performance evaluation criteria, general manager bonus plan, and by providing training to Plaintiff as the general manager but to no other employee.  Furthermore, in considering whether the company's goals could be achieved if the manager failed to perform his managerial duties or non-managerial duties, it is clear that the company's goals could not be achieved if Plaintiff did not perform his managerial duties.  Here the company's goals could not be achieved if Plaintiff did not perform his managerial duties as no other employee was trained on policy and procedure, no other employee had hiring responsibilities, no other employee had the responsibility for the schedule, no other employee

---

[3] While Plaintiff makes an argument that managerial duties were not more important than non-managerial duties because under Plaintiff's calculations the pay of the two employees were similar, the Court notes that it will take up this issue in greater detail in Section 4, as Section 4 is intended to cover the employees' relative pay.

8

was responsible for maintaining inventory, and no other employee was given the responsibility to ensure the store's policy and procedures were being followed.[4]

By contrast, Plaintiff does not present any facts that are contrary to the facts disputed by Plaintiff. Instead, Plaintiff merely discusses that because by his calculations Section 4 weighs in his favor, it proves that Section 1 should weigh in his favor also. Since Plaintiff did not dispute Defendant's facts showing that it placed more importance on managerial duties, did not present any facts or evidence that Defendant did not place more importance on managerial duties, and the job description, performance evaluation criteria, bonus plan, and training place more importance on Plaintiff's managerial duties, this factor weighs in favor of Defendant.

*2. Time spent on exempt work*

The second primary duty factor courts consider is the amount of time the employee spends on exempt work. *Id*. "The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee." 29 C.F.R. § 541.700(b). "Time alone, however is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work." *Id*. "Employees who do not spend more than 50 percent of their time performing exempt work may still meet the primary duty requirement if the other factors support such a conclusion." *Id*.

"Concurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements of § 541.100 are otherwise met." 29 C.F.R. § 541.106. Whether the employee satisfies the requirements set forth in § 541.100 is determined on a case-by-case basis by examining the factors set forth in § 541.700. *Id*. For example, managers in a retail environment performing exempt work like supervising and

---

4 To the extent any other employee was given these responsibility, the employee was delegated the task by Plaintiff and was not given the responsibility as part of his or her job description. Plaintiff always retained the ultimate responsibility for the task.

9

directing other employees' work, ordering merchandise, and managing the budget may still have management as their primary duty even if the manger spends more than 50 percent of his or her time performing non-exempt work. 29 C.F.R. § 541.700(c). However, if the manager is closely supervised and earns little more than the nonexempt employees, the manager would generally not meet the primary duty requirement. *Id*.

Defendant argues that while Plaintiff asserts that he spent approximately 80% of his work week performing non-managerial tasks, such as running the cash register, stocking, cleaning, and making coffee, that Plaintiff cannot overcome the exemption by simply claiming he spent the majority of his time performing non-managerial duties. Cort Dep. 84:1-8, 90:9-25, 109:16-25, 135:12-136:3. Under these circumstances, Defendant asserts that the time factor is less momentous because Plaintiff's managerial and non-managerial duties were not clearly severable. *See Speedway*, 506 F.3d at 504 ("[T]he time factor is less momentous, and might even be 'somewhat misleading,' where 'the employee's management and non-management functions are [not] . . . clearly severable.'" (quoting *Donovan v. Burger King Corp.* (*Burger King I*), 672 F.2d 221, 226 (1st Cir. 1982)); *Jones v. Va. Oil Co.*, 69 Fed. App'x 633, 637 (4th Cir. 2003) (affirming the district court's grant of summary judgment where the plaintiff claimed she spent between 75-80 percent of her time engaged in non-managerial tasks because her managerial tasks could be performed simultaneously with her non-managerial tasks)). In addition, Defendant cites to several cases in which the courts concluded that retail or convenience store managers were exempt employees even though they spent the majority of their time on non-managerial duties. *See Grace v. Family Dollar Stores, Inc.*, 637 F.3d 508, 514 (4th Cir. 2001); *Murray v. Stuckey's Inc.*, 939 F.2d 614, 618-20 (8th Cir. 1991); *Grace v. Family Dollar Stores,*

10

*Inc.*, 2011 WL 3515860, at *3-4 (W.D.N.C. Aug. 11, 2011); *Kastor v. Sam's Wholesale Club*, 131 F. Supp. 2d 862, 866-67 (N.D. Tex 2001).

Similarly, Plaintiff asserts that he spent approximately 80 percent of his time engaged in non-managerial duties and that the remainder of his work was spent on managerial duties. However, Plaintiff argues that because he did not spend more than 50 percent of his time performing managerial or exempt duties, that this factor will only weigh in favor of Defendant if the other factors support such a conclusion. Plaintiff closes by asserting that the other factors do not support the conclusion that Plaintiff's primary duty was management and that accordingly, this factor weighs in his favor.

In this case, Plaintiff testified that he spent approximately 80% of his work week performing non-managerial tasks, including running the cash register, stocking shelves, cleaning, and making coffee. (Cort Dep. 84:1-8; 90:9-25, 109:16-25, 135:12-136:3). In addition, he testified that his managerial tasks were performed on an "ongoing" and "daily" basis and they were not clearly severable from his non-managerial tasks. (Cort Dep. 73:8-19; 139:22-141:13). Finally, Plaintiff admitted that he often delegated some of his managerial tasks, such as preparing the weekly schedule and training new employees, to nonexempt employees even though he was ultimately responsible for this work. (Cort Dep. 45:20-46:22, 59:8-60:6.) These facts are undisputed.

As with the Plaintiffs in the cases cited above, Plaintiff contends that he devoted most of his time to non-managerial duties while he was at work. However, similar to the above cases, Plaintiff worked in a retail environment and concurrently participated in the management of the store while he was performing non-managerial duties. Plaintiff had the ultimate responsibility of ensuring that the store was fully stocked, clean, and profitable. He also had the responsibility to

11

ensure employees were scheduled at appropriate times and that the employees were properly trained. The fact that Plaintiff may have delegated this work to other employees or may have been engaged in some of these activities while performing non-managerial work does not change the fact that Plaintiff was ultimately the one responsible for the success of the store and accordingly, was performing management duties when he was in the store, even though he may have been participating in mundane activities necessary for the store's operation because these managerial and non-managerial activities are not always clearly severable.

In addition, the C.F.R. states that "[e]mployees who do not spend more than 50 percent of their time performing exempt work may still meet the primary duty requirement if the other factors support such a conclusion." As is set forth below, Defendant has met its burden of proving that the other factors support the conclusion that the primary duty requirement is met and even though Plaintiff spent less than 50 percent of his time on managerial duties, management was his primary duty. Accordingly, this factor weighs in Defendant's favor and a finding that Defendant is entitled to summary judgment.

### 3. *Relative freedom from direct supervision*

The Third primary duty factor is the employee's "relative freedom from direct supervision." 29 C.F.R. § 541.700(a). "Relative freedom from supervision does not demand complete freedom from supervision. *Grace v. Family Dollar Stores, Inc.*, 2012 WL 3112037 at *5 (W.D.N.C. July 31, 2012); *see also Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 507 (6th Cir. 2007) (explaining that if complete freedom from supervision was required all employees other than the chief executive officer would be disqualified from satisfying this factor of the primary duty inquiry).

12

Defendant asserts that Plaintiff was given relative freedom from direct supervision as part of his role as General Manager. To support this assertion, Defendant contends that one need not have independent and sole authority over managerial tasks or have the "final say" over managerial decisions to be considered an exempt employee. *See Kastor v. Sam's Wholesale Club*, at 867-68 (holding that final decision-making authority is not the test for determining whether an employee is exempt because if one had to have the final word one would rarely if ever be exempt under the regulations because even a CEO is constrained by the board of directors). In addition, Defendant contends that the use of technology is irrelevant where the proper completion of the task assisted by the technology remains the ultimate responsibility of the manager. *See Haines v. S. Retailers, Inc.*, 939 F.Supp. 441, 447 n. 6 (E.D. Va. 1996). Defendant argues that the fact that Plaintiff claims he was controlled through computerized systems does not change the analysis. Defendant asserts that either way Plaintiff had the responsibility of fulfilling certain duties that would not have been accomplished without him and because of this the technology aspect is irrelevant. For instance, Defendant notes that product orders, while generated by Defendant's computer system, were based on the accuracy of Plaintiff's inventory counts; in addition, the salary matrix calculated the number of hours available for scheduling in the upcoming week but Plaintiff had the responsibility to allocate and schedule the hours and in the end, the schedule did not need to be approved by anyone. Accordingly, Defendant asserts that Plaintiff has not generated a material fact dispute on this point and that this factor weighs in its favor.

Conversely, Plaintiff contends that he was still under a great deal of control because Defendant used centralized management systems in a manner that curtailed his ability to direct or manage the affairs of his store. To support his contention, Plaintiff argues that the computerized

and automated ordering, scheduling, inventory placement, security procedures, and pay rate systems acted as his supervisor and substantially constrained his ability to make discretionary decisions that were normally made by managers. Due in large part to the existence of the automated systems, Plaintiff argues that Defendant cannot meet its burden of showing that Plaintiff was relatively free from direct supervision and that the extent to which Plaintiff was subject to supervision is an issue of fact for the jury.

In this case it is undisputed that Plaintiff was not under significant human supervision in carrying out his management duties. In addition, Plaintiff has not shown a genuine issue of material fact exists on this point. Defendant had the initial burden and it provided ample evidence why Plaintiff was free from direct supervision to support a finding that Plaintiff's primary duty was management. Defendant cited to several cases supporting his factual assertions that Defendant did not supervise Plaintiff in a manner that was inconsistent with the primary duty test. Defendant was also able to show that while technology was used to make Plaintiff's job easier, Plaintiff still had the responsibility of ensuring that the results were consistent with Defendant's standards and goals.

Instead of putting forth evidence to show that this was in dispute, Plaintiff concedes that he was not supervised by a human supervisor in his physical presence but that the computerized systems constrained Plaintiff in his decision making. While Plaintiff's allegations could conceivably be the basis for a factual dispute, Plaintiff does not provide any evidence of specific facts that Defendant's computer systems could serve as a substitute to human supervision or that Plaintiff did not bear the responsibility for the results. In addition, Plaintiff does not provide any legal authority for that proposition. Plaintiff simply states that he "would attempt to prove at trial that he was substantially and continuously supervised in the sense that centralized automated

14

management systems so substantially curtailed his options as a manager, that he was effectively under a great deal of supervision." In the absence of any evidence or factual dispute supporting this theory Plaintiff has not done enough to preclude summary judgment on this point. (If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). As Defendant has shown that Plaintiff was free from direct supervision and Plaintiff has not set forth specific facts showing genuine issue exists for trial, the Court finds that this factor weighs in favor of Defendant.

> 4. *The relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.*

The fourth and final primary duty factor concerns the relationship between Plaintiff's salary and the wages paid to other, nonexempt employees for the kind of nonexempt work performed by the employees. 29 C.F.R. § 541.700. No specific mathematical formula is prescribed for determining whether an allegedly exempt employee's salary is higher than a non-employee's exempt wage. *Moore*, 352 F. Supp. 2d at 1278, 1279 (stating "mathematical gymnastics" of hourly wage calculation are not required; instead, the court should simply compare the manager's weekly salary with the highest nonexempt weekly wage).

Here the parties do not dispute the material facts.[5] Instead, the parties dispute the appropriate manner for comparing Plaintiff's salary to that of the next highest paid nonexempt employee. Defendant asserts that the relationship between the wages should be assessed by comparing the bi-weekly pay of Plaintiff and the next highest paid nonexempt employee or by

---

5 Plaintiff and Defendant use different hourly rates for the next highest paid employee in their analyses. Defendant claims that the undisputed material fact is that the next highest paid employee actually earned $11.10 an hour or a gross weekly wage of $444.00 and that the wage used by Plaintiff is not an accurate reflection because the pay for the week used by Plaintiff was at the premium "holiday rate." Supp. Dec. of Grove, § 2. The Court does not consider this to be a dispute of material fact and will use premium "holiday rate" in its analysis.

calculating Plaintiff's hourly wage based on the number of hours he was expected to work compared against the next highest paid nonexempt employee's hourly wage. Furthermore, Defendant asserts that in addition to Plaintiff's pure hourly rate, the Court should consider the bonuses Plaintiff could have earned had he achieved certain performance goals. Cort. Dep. 40:23 – 41:15.

Plaintiff asserts that an entirely different calculation should be used. First, Plaintiff's mathematical calculation provides an hourly wage range for Plaintiff based upon his testimony that he worked between 50 and 65 hours week. Cort Dep. 112:2-3. Then, Plaintiff's calculation establishes an hourly wage range for the next highest paid nonexempt employee based on the hypothetical situation of what the next highest paid employee would have been paid had the employee worked overtime and been paid for those hours. Plaintiff's calculation does not take into account that his pay was never docked, even if he did not work the expected number of hours, or the bonuses Plaintiff was eligible to earn had he achieved certain performance goals. Cort Dep. 38:19 - 39:22, 106:16-19, 114:7-9; Cort Dep. 40:23.

While the Court is not aware of any controlling authority from the Department of Labor or Eighth Circuit, several other courts have addressed this issue. In *Moore*, the court compared the wages and determined that there was a sufficient difference in wages when the manager earned $682.69 per week and was eligible for yearly bonuses based on sales and the associates were paid $360.00 per week and were not eligible for the bonus. *Moore*, 352 F. Supp. 2d at 1278-79. In *Thomas v. Speedway SuperAmerica, LLC,* 506 F.3d 496, 508-09 (6th Cir. 2007), the court determined the manager's hourly wage should be based on an average of 50 hours per week. The court concluded that the estimate was the best way to determine the effective rate of pay because even though the manager testified that she often worked more than 50 hours a week,

the manager could have earned bonuses that would have entitled her to up to an extra $600 a week if she hit her bonuses each week. *Id*. Due to the indeterminable factors, namely the number of hours worked by the manager and the bonuses she could have received, the court concluded the best estimate for the manager's wage would be the estimate of 50 hours a week. *Id*. at 509. The court then assigned the next highest paid employee's hourly wage without giving the employee credit for overtime the employee did not work. *Id*. Finally, in *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir. 2008), the court used the range of hours worked to determine the manager's hourly wage. In making that calculation the court did not increase the hourly employee's salary based on the amount of overtime he would have received. *Id*. The Court is not aware of and Plaintiff did not cite to any cases in which the ruling court applied the method advanced by Plaintiff today.

While Plaintiff provides a method whereby the Court could conclude that the relationship between Plaintiff's rate of pay and the next highest paid employee does not weigh in Defendant's favor, the Court does not find Plaintiff's argument persuasive as it is based on a hypothetical employee. There is no evidence that any employee even comes close to fitting the description of the employee used in Plaintiff's analysis. The Court must analyze the issue in a way that is compatible with the facts of the case. The facts that are undisputed are: Plaintiff was expected to work 54 hours a week; Plaintiff worked between 50 and 65 hours a week; Plaintiff's pay was not docked when he worked less than 54 hours a week; Plaintiff's salary was $1,632.00 every two weeks at the time his employment was terminated; for the two week period ending January 22, 2010, Plaintiff was paid $1,616.57; Plaintiff's compensation package provided him with the opportunity to earn to $1,000.00 a month or 461.54 every two weeks for achieving performance

17

goals; and for the same two week period ending January 22, 2010, the next highest compensated nonexempt employee earned $898.64.

Applying the above facts to the situation at hand, the Court concludes that this factor weighs in Defendant's favor. In comparing Plaintiff's and the next highest paid nonexempt employee's wages by simply evaluating the amount of money each was paid and the fact that the manager was able to receive bonuses, as the court did in *Moore*, the Court concludes there is a sufficient difference in wages to find Plaintiff was an exempt employee. Plaintiff was paid nearly double the next highest paid employee's wages for the same period, $1,616.57 compared to $898.64. In addition, Plaintiff was eligible to receive bonuses that no other employee was eligible to receive.

Furthermore, in comparing the wages by establishing a base hourly wage for Plaintiff based upon the number of hours he was expected to work each week and comparing that with the other employee's hourly, as was done by the court in *Thomas*, the Court concludes that there is a sufficient difference in wages. Plaintiff was expected to work 54 hours a week. Had Plaintiff worked 54 hours a week his hourly wage would have been 14.97 an hour; the next highest paid employee's hourly rate was 11.68 an hour for that period.[6] The Court concludes that the additional $3.29 an hour Plaintiff is paid on an hourly basis is a sufficient difference in wages to support a finding that this factor weighs in Defendant's favor.

Finally, in comparing the wages by establishing Plaintiff's base hourly wage range and comparing that with the other employee's hourly wage, as was done by the court in *Morgan*, the Court still finds that pay differential is large enough to support that this factor weighs in Defendant's favor. Under this analysis Plaintiff's hourly range varies from $12.44 to $16.17 an

---

6 The Court notes that Defendant contends that the next highest paid employee's hourly wage is artificially high for this pay period due to working overtime hours and that normally his hourly wage was $11.10.

hour.  Comparing this to the next highest paid employee's salary, Plaintiff was paid between $.76 and $4.49 an hour more than Plaintiff.  While Plaintiff was not paid much more than the next employee when he worked 65 hours a week, Plaintiff was paid considerably more when he worked 50 hours a week.  All things considered, Plaintiff had an opportunity to earn a significantly higher hourly wage than the other employees, and unlike the other employees, Plaintiff had the ability to manipulate his effective hourly wage by choosing to work a more or less hours.  Considering all this and that Plaintiff could have increased his hourly wage by qualifying for bonuses, the Court concludes that applying the test in *Morgan* yields the same result as the other tests and supports a finding that this factor weighs in Defendant's favor.

For the reasons set forth in the preceding four sections, all of the "primary duty" factors weigh in favor of Defendant.  Furthermore, there are no genuine issues of material fact in dispute with regard to Plaintiff's FLSA and MWHL claims.  Accordingly, the Court finds that Defendant is entitled to Summary Judgment on Plaintiff's FLSA (Count I) and (Count II) claims and **GRANTS** Defendant's Motion for Summary Judgment on these counts.

> B.  *Defendant is entitled to summary judgment on Plaintiff's state common law claims for breach of contract, unjust enrichment, and quantum meruit.*

In addition to seeking Summary Judgment on Plaintiff's FLSA and MWHL claims, Defendant moves for summary judgment on Plaintiff's state common law claims for breach of contract, unjust enrichment, and quantum meruit.  Defendant argues that Plaintiff's state common law claims are preempted by the FLSA.  Plaintiff concedes that Defendant is entitled to summary judgment because his state common law claims are preempted by the FLSA.  As Plaintiff does not dispute Defendant's assertion, the Court will not analyze Defendant's arguments any further.  After careful consideration, the Court agrees with the parties and concludes Defendant is entitled to summary judgment on Plaintiff's state common law claims.

Accordingly, Defendant's Motion for Summary Judgment (Doc. 23) on Plaintiff's Breach of Contract Claim (Count III), Quantum Meruit Claim (Count IV), and Unjust Enrichment Claim (Count V) is **GRANTED**.

## II. DAVID CORT'S MOTION FOR SUMMARY JUDGMENT

Also before the Court is Plaintiff's Partial Motion for Summary Judgment (Doc. 21). In his motion for summary judgment Plaintiff seeks summary judgment on his FLSA and MWHL claims.[7] As the Court has already granted Defendant's Motion for Summary Judgment, Plaintiff's motion is **DENIED** as **MOOT**.

**IT IS SO ORDERED**.

DATE: February 11, 2013         */s/ Richard E. Dorr*
                                RICHARD E. DORR, JUDGE
                                UNITED STATES DISTRICT COURT

---

7 The Court notes that the subject matter and arguments contained in Plaintiff's Partial Motion for Summary Judgment and the related briefs are substantially similar to the arguments set forth in Defendant's Motion for Summary Judgment. The only real difference is the capacity in which the argument is filed.